# EXHIBIT B

# JAMS ARBITRATION

|  |  |
|---|---|
| IV SOLUTIONS, INC., a California corporation, | JAMS Case No. 120055122 |
| Claimant and Counter-Respondent, | **ORDER RE RESPONDENTS' MOTION FOR SANCTIONS** |
| v. | |
| AETNA, INC., a Delaware corporation, *et al.*, | Arbitrator:  Hon. Gail Andler (Ret.) |
| Respondents and Counter-Claimants. | |

The Arbitrator has reviewed and considered Respondent's Motion for Sanctions, and all related briefing, declarations and attached exhibits.  On January 8, 2021 at 8:00 am PST, a hearing was held via videoconference (using the Zoom platform).  Eric Levinrad and Marc Rohatiner appeared on behalf of Claimant IV Solutions, Inc. ("IVS").  Grant Geyerman, Christopher Berg, Enu Mainigi, Matt Lachman, Ethan Kerstein and Elizabeth Mitchell appeared on behalf of Respondents Aetna, Inc., *et al.* ("Aetna").  The Arbitrator rules as follows:

## I.      Introduction and Background

This dispute arises out of contracts between IVS and Aetna with respect to the provision of in-home transfusion services for Aetna's patients, and related payments thereunder.  IVS contends Aetna fraudulently secured IVS's services without ultimately paying IVS's rates.  Aetna counters that IVS employed a fraudulent scheme to extract payments for services not rendered and charge unconscionably high rates for services that were rendered.

The discovery process has been ongoing for months.  On February 27, 2020, the Arbitrator signed the parties' Joint Arbitration Schedule.  Pursuant to the Joint Schedule, the parties agreed to produce the documents listed in the attached "Schedule A," which included specific documents, custodial files of twelve current and former IVS employees and a reference to distinct "search methodologies" negotiated by the parties.  On May 4, 2020, the dates in the Scheduling Order were modified and the Arbitrator signed the parties' Joint Arbitration Schedule (Revised).  On May 18, 2020, the Arbitrator held a hearing on the parties' initial discovery dispute.  Ultimately, the dispute was deemed premature and the parties agreed to continue to meet and confer in an attempt to resolve Aetna's existing concerns relating to the potential spoliation of evidence and IVS's document preservation obligations.

Following three weeks of discussion, on June 10, 2020, the Arbitrator held an additional hearing on Aetna's continued concerns about the completeness of IVS's document production,

again raising issues with respect to the potential spoliation of evidence and IVS's failure to implement and comply with document preservation obligations. Aetna requested the Arbitrator enter various related orders. IVS objected to the requested orders and asserted there was an insufficient basis for them. IVS conceded that its initial document production was deficient and also conceded that there was no litigation hold implemented at the company. However, IVS maintained that no relevant documents had been withheld. IVS committed to continue its search to compile any existing additional information, namely from the .PST files for the twelve identified custodians and the non-.PST files at issue. IVS also agreed to make further inquiries about its computer expert, Yonatan Hoorizadeh, and IVS' COO, Marlene Casillas. IVS did not object to a forensic investigation of its electronic devices.

The Arbitrator suggested that the parties jointly retain Daniel Garrie as a neutral consultant to assist with a forensic evaluation. Aetna hired Daniel Garrie to move the matter forward because IVS did not confirm it would participate in the retention. Mr. Garrie began his investigation. On July 15, 2020, the Arbitrator signed the parties' Second Amended Joint Arbitration Schedule, incorporating the previous Schedules' description of discovery to be produced and again, pushing out deadlines. On July 16, 2020, the Arbitrator held an additional discovery status conference. IVS had completed its .PST file production and was reviewing its non-.PST files to be produced within one week, any remaining documents to be produced on a rolling basis. IVS also agreed to respond to Mr. Garrie's informational requests within the week. Finally, IVS agreed to create a timeline to provide Aetna with detail as to the claims for which IVS alleges payment by Aetna is owed.

Following Mr. Garrie's investigation and report of IVS's discovery efforts, Aetna filed its Motion for Sanctions against IVS on November 23, 2020. Aetna is seeking terminating and non-terminating sanctions for IVS's conduct throughout the discovery process. Specifically, Aetna is seeking one or more of the following sanctions: 1) dismissal of IVS's claims with prejudice; 2) an order of adverse inference against IVS with respect to Aetna's counterclaims; 3) an award of fees and costs to Aetna for costs incurred investigating the issues raised in its Motion; and 4) appointment of a forensic neutral to oversee and report on IVS's continued discovery efforts at IVS's cost.

## II.     Analysis

The JAMS Rules provide the Arbitrator with the discretion and authority to "order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator." JAMS Rule 29. The Arbitrator may award the following sanctions, including, but not limited to, "assessment of Arbitration fees and Arbitrator compensation and expenses; assessment of any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply." *Id.*

Despite her discretionary authority to grant sanctions, the Arbitrator must also be true to the parties' decision to contract for resolution of their disputes in the arbitral forum. Notice and the opportunity to be heard is crucial to the spirit of the arbitration process and the sanctity of the

right of due process, particularly when terminating sanctions are sought.  On that point, the Arbitrator notes there have been no formal discovery orders issued by the Arbitrator, or violations thereof, as a result of a motion to compel discovery by either party.

### A.      Sanctionable Conduct Asserted by Aetna

Aetna argues IVS has engaged in willful, bad faith discovery conduct that supports its motion for an award of sanctions from the Arbitrator.  Acknowledging concerns associated with IVS's production under its previous counsel, IVS insists it has continued to comply with the February 2020 Order in good faith and has been cooperative with Aetna's requests for ESI.

### 1.      Failure to issue a litigation hold after considering litigation.

IVS has admitted no litigation hold exists at the company, despite the 2015 Board of Pharmacy proceeding against IVS and IVS's advice to Aetna in October 2016 that it would pursue claims against Aetna.  Nevertheless, IVS's COO has represented that the company does not destroy records, including ESI, and has an internal policy to retain all documents indefinitely.  Hoorizadeh also testified that IVS employees save business related information to IVS's server.

### 2.      Failure to produce specific categories of documents (or generally apply agreed-upon search terms) in the February 2020 Order by the Rule 17 deadline.

According to the February 2020 Order, the Rule 17 deadline was April 17, 2020.  On that date, Aetna represents IVS produced only one email.  According to Aetna, since that date, IVS has made over a dozen productions, the last of which was produced on September 21, 2020, four months after the deadline.  More importantly, Aetna maintains IVS has yet to state its Rule 17 production is complete or provide a time frame in which it will be completed.  Aetna cites IVS's failure to produce documents from certain repositories for Marlene Casillas, IVS's COO, and Priscilla Laspreses, IVS's Senior Collector and one of its primary liaisons with Aetna, as well as the two pharmacists in charge during the relevant time period, Renee Sadow and Jeanie Kim.

Aetna also argues IVS failed to apply the search terms contemplated in the February 2020 Order and instead applied only one term, "Aetna," which resulted in the single email produced on April 17, 2020.  Aetna then represents that IVS misrepresented the results of the one term it applied, indicating subsequent productions by IVS included over 4,500 documents containing the term "Aetna."

In response, IVS asserts that in the spring of 2019 prior to the implementation of a formal scheduling order (and through previous counsel), it produced over 42,000 pages of relevant documents to Aetna, including billing notes, patient files, and a spreadsheet detailing the claims at issue in this matter.  On the Rule 17 deadline, IVS reproduced those documents, along with additional relevant documents.  IVS also argues that, while it timely produced additional documents under its Rule 17 obligations, neither party produced all required documents on April 17, 2020.  Still, after receiving a letter from Aetna pointing out deficiencies in the production, IVS claims it investigated and remedied those deficiencies, producing additional

3

communications, 20,066 pages of documents related to invoices and receipts, and IVS's full Continuum Care Policies. IVS's counsel also conducted its own investigation, sending a paralegal to IVS offices to review its computers and thereafter producing additional emails. IVS then hired Hoorizadeh to conduct a comprehensive inventory of IVS's computers and copy all electronic documents (including email and non-email data files) for review. IVS's counsel also engaged SETEC Investigations, a forensic discovery company, to search the non-email data files collected for potentially relevant documents. Based on its investigations, IVS claims it located and produced over 9,000 responsive and non-privileged non-email files and has now in total produced over 300,000 pages of documents to Aetna. Throughout this process, IVS insists it has repeatedly and in good faith responded to all of Aetna's requests for further information about the document production, including providing declarations from Casillas and Hoorizadeh.

3. **Failure to perform a good-faith search of all documents for twelve agreed-upon custodians from the February 2020 Order, including the failure to search existing E-document repositories;**

Aetna contends IVS has not searched the remote computers of Casillas and Laspreses because these are personal computers and there is no legitimate need to search them. Also, according to Aetna, IVS has refused to search for relevant documents in the "iDrive" system that backs up IVS's computers. Mr. Garrie concluded that IVS failed to produce responsive ESI from its custodians and may have intentionally destroyed evidence. (Motion, Ex. 1, Garrie Report at 3.)

IVS admits that it has not searched the personal computers of Casillas and Laspreses or restored a backup from its iDrive backup system but calls attention to the fact that Aetna has never moved to compel this information. With respect to the Casillas and Laspreses computers, IVS insists it informed Aetna in September 2020 that much of the information on the computers was private and any relevant information was also held on IVS's server.

4. **Failure to comply with industry-standard E-discovery collection and production practices.**

In his report, Aetna's consultant, Mr. Garrie, concluded that IVS (1) failed to apply optical character recognition ("OCR") to email attachments before running search terms on emails; (2) labeled .PST and .OST files in a confusing manner, making it almost impossible to determine from which IVS employee's files a document was produced; (3) did not unlock .PST and .OST files that were password-protected; (4) provided inaccurate date ranges for some .PST files; (5) failed to produce ESI with custodian metadata; and (6) failed to Bates stamp the individual emails produced within a given .PST file, causing significant confusion during the discovery and deposition process. (Motion, Ex. 1, Garrie Report at 8-12.)

IVS insists it provided extensive information in July 2020 in response to Mr. Garrie's questionnaire to IVS, particularly about the .PST files being searched. IVS claims it was transparent in July 2020 that certain documents were password-protected and IVS was unable to access them and that it had not OCR'd email attachments. Again, IVS calls attention to the fact that Aetna never moved to compel on this issue. After being ordered by the Arbitrator to

complete Mr. Garrie's questionnaire as written, IVS argues it was again transparent about its abilities to ascertain "timeframe of custodian use." IVS also advised it would convert .OST files to .PST files for search purposes and ask Hoorizadeh to try to access the password protected files. Hoorizadeh also submitted to an interview by Mr. Garrie in August 2020. IVS maintains it has now requested that SETEC attempt to access the password protected files and OCR the email attachments.

### 5.    Misrepresentation of the number of IVS computers destroyed in 2015.

Aetna contends IVS has repeatedly changed its estimation of the number of IVS computers destroyed. Initially, Aetna argues IVS represented it had destroyed the ESI of nine of the twelve custodians in the Scheduling Order during an office move in 2013. But Aetna located correspondence with seven of those nine custodians dated after 2013 and IVS then claimed the move in which computers were destroyed actually occurred in 2017. Aetna submits that IVS's counsel sent a paralegal to the IVS offices, where IVS provided the paralegal with access to only three computers. According to Aetna, it has become clear that IVS actually has a total of 14 computers and a server, most of which the paralegal was not provided access. IVS then retained Hoorizadeh to investigate IVS's actions and assist in collecting further documents. Hoorizadeh submitted a declaration, confirming that only four of IVS's computers were destroyed in 2017 but that he had saved the contents to IVS's server. Based on an invoice Aetna accuses IVS of altering, Aetna now believes IVS destroyed seven old computers in 2015.

IVS maintains it has not tried to hide anything about the destruction of the computers at issue. IVS points out it provided a full set of Hoorizadeh's invoices to Aetna in July 2020 (including the invoice Aetna accuses IVS of altering), as well as all emails between Hoorizadeh and IVS. IVS also takes issue with Aetna's failure to provide Mr. Garrie with Hoorizadeh's invoices prior to his interview of Hoorizadeh. Mr. Garrie did not ask about the inconsistency and Hoorizadeh to unable to explain it. According to Hoorizadeh, the inconsistency resulted from his creation of an estimated invoice *prior to* performing the work on IVS's computers, then failing to document that the final invoice created *after* performing the work on the computers replaced and superseded the initial invoice. Hoorizadeh explained that he was not fully aware of the work necessary at IVS when he created the initial estimation invoice, as reflected in the final invoice, and there was no attempt to dubiously "alter" the invoice.

### 6.    Spoliation of evidence

Aetna suggests that three groups of evidence may have been spoliated. According to Aetna, IVS has not produced *any* email files for its two former pharmacists in charge, Sadow and Kim, two of the twelve identified custodians in the Scheduling Order. Sadow was employed as pharmacist in charge at IVS from 2009-2012, while Kim held the same position as pharmacist in charge from 2008-2014. Both employees were responsible for ensuring IVS complied with state regulation and accreditation standards, a requirement under the contract between the parties. Aetna also points to the seven IVS computers that were destroyed in October 2015, despite IVS's insistence that its internal policies do not allow for the destruction of hard-copy records or ESI files and require the retention of all documents indefinitely. Finally, Aetna insists IVS has failed to produce any documents prior to June 2015 relating to IVS's requests for proof from Aetna that

it was excluded from Aetna's National Advantage Program. IVS claims it did not learn of its exclusion from the Program until 2016. Aetna suggests the lack of these documents is odd, given IVS's in-house counsel's statement in 2015 that IVS had been repeatedly requesting proof of exclusion from Aetna.

IVS responds that Aetna is merely speculating about alleged spoliation. IVS claims it has been transparent with Aetna about its inability to find .PST files for Sadow and Kim. IVS also notes Kim was a part time employee and it is still not clear whether she had an email address. IVS admits it cannot explain why Sadow's emails are not on its computer system but insinuates there is nothing intentional about their absence. With respect to the destruction of computers, IVS points to Hoorizadeh's declaration, wherein he states he "transferred all user data from the seven computers being replaced to the seven new computers" when he installed them in October 2015. (Hoorizadeh Decl., ¶ 5.) IVS also argues that the lack of documents relating to its requests for proof of exclusion from the Program is not unusual. IVS suggests it is perfectly plausible that its in-house counsel was referring to previous verbal requests for documentation.

## B.    Are Terminating Sanctions Warranted?

In deciding whether terminating sanctions are warranted, courts generally consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1055 (9th Cir. 1998). The imposition of terminating sanctions is a "very severe" remedy and may only be justified on a showing of "willfulness, bad faith, and fault. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

Aetna contends it is significantly prejudiced by IVS's failure to comply with its Rule 17 obligations in a timely and good faith manner. Specifically, Aetna insists it has (1) been denied access to documents required to prepare its defenses and support its counterclaims, (2) been hindered by delays in IVS's production in making full use of the discovery period, delaying and then finally completing depositions and expert discovery and preparing dispositive motions without a fulsome production from IVS, and (3) incurred substantial fees to investigate IVS's conduct. Aetna also argues prejudice as a result of IVS's alleged spoliation of evidence. Aetna focuses on the February 2020 Scheduling Order in arguing that any sanctions short of dismissal would be inadequate to address IVS's perceived "extreme misconduct."

The February 2020 Scheduling Order, presented as a joint proposed order by the parties and signed into the record by the Arbitrator, delineated the custodial files and summary of topics each party agreed were relevant to the Rule 17 exchange. The parties indicated they would search for and produce responsive documents pursuant to their own "search methodology" or "document collection methodology" by a date certain. While IVS's Rule 17 production as of April 17, 2020 was admittedly not complete, IVS has taken steps since then to attempt to rectify the deficiencies in its production and has represented to the Arbitrator that it has produced every responsive, non-privileged document it has been able to find. The frustration of Aetna is understandable. IVS has repeatedly come up with excuses which have been viewed by Aetna as

6

bad faith delay tactics. The Arbitrator must concern herself with the state of the record following notice and an opportunity to be heard. Based on the present record, the Arbitrator does not believe the overall record presented shows the requisite "bad faith" and prejudice that would warrant imposing the severest of sanctions.

As the Arbitrator previously mentioned, notice and the opportunity to be heard are critical due process considerations, ***particularly*** in the arbitral forum. This factor certainly outweighs the others in determining the application of terminating sanctions. The Arbitrator recognizes the potential for prejudice to Aetna, given the delays in production by IVS. However, any prejudice to Aetna is more appropriately remedied by continuing the arbitration hearing and allowing Aetna additional time to complete its discovery, rather than dismissing IVS's claims with prejudice. As appropriate, Aetna may also ask, at a later time, that monetary sanctions or fee-shifting be considered in connection with costs attributable to the delay.

Moreover, the Arbitrator is bound to consider the availability of less extreme sanctions. *See, Conn. Gen. Life Ins.*, 482 F.3d at 1096 ("The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions."). Aetna's failure to move to compel much of the information it claims was not produced under Rule 17 counsels against the Arbitrator's imposition of terminating sanctions. Despite knowledge of certain specifics of IVS's production for which Aetna takes issue, Aetna has never moved to compel IVS to supplement what has been produced. Rather, the parties continually sought "guidance" from the Arbitrator in moving their Rule 17 exchanges forward. Thus, the Arbitrator has never issued a formal order in response to a motion to compel and has never had the opportunity to issue lesser sanctions, where appropriate. Sanctions should be graduated. For these reasons, the Arbitrator cannot impose terminating sanctions on IVS.

**D.     Are Spoliation Sanctions Warranted?**

Proof of spoliation to establish an award of related sanctions requires the consideration of three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 992 (citations omitted). Where intent to deprive the opposing party of the use of spoliated information can be established, courts may presume an adverse inference, strike claims or dismiss the action in full. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016). However, even where the three-part test is satisfied, a court may deny a request for an adverse inference instruction if the degree of fault and prejudice were insufficient to warrant imposing it. *Apple Inc.*, 888 F. Supp. 2d at 993.

Generally, Aetna argues it is prejudiced by the loss of the spoliated documents, as they cannot be restored or replaced by other discovery. Aetna also focuses on IVS's obligation to preserve these documents. IVS admittedly failed to implement a litigation hold, despite the 2015 Board of Pharmacy proceeding against IVS and IVS's stated intent to bring claims against Aetna in October 2016. *See, PersonalWeb Techs., LLC v. Google Inc.* 2014 WL 580290, at *3 (N.D. Cal. Feb. 13, 2014) ("The Court still finds that PersonalWeb spoliated evidence as a result of its

failure to timely implement a litigation hold."). Aetna also points out IVS's internal policy to preserve electronic documents indefinitely. *See,* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment ("[C]ourts may sometimes consider whether there was an independent requirement that the lost information be preserved. Such requirements arise from many sources – statutes, administrative regulations, an order in another case, or a party's own information-retention protocols.").

### 1.   Sadow and Kim Files

Aetna argues documents associated with these two custodians are central to its defenses and counterclaims that IVS did not comply with pharmacy accreditation standards, misrepresented its compliance to Aetna in breach of the parties' agreement, and inflated its billing practices to Aetna's detriment. To date, Aetna insists it has received only seven emails that include Sadow's email address and none for Kim. Aetna seeks an adverse inference that "IVS knew it was not operating according to accreditation standards and, thus, intentionally misled Aetna and its members by holding itself out as accredited in order to obtain their business." (Aetna Motion, at 24.)

The Arbitrator acknowledges Aetna's position with respect to these documents and the lack of explanation from IVS concerning their absence. However, the adverse inference requested by Aetna is more draconian than the Arbitrator is willing to impose, based on the current state of discovery in this case. Assuming a comprehensive search of IVS's iDrive does not turn up additional documents related to Sadow and Kim or the final report of the new forensic evaluation raises further concerns, then the Arbitrator may be inclined to impose a less draconian inference once the results of further forensic investigation discussed infra is known and the specific prejudice can be balanced.

### 2.   Destruction of Computers

Despite no knowledge of what was held on the destroyed computers, Aetna argues the law presumes the documents would have been favorable to it. *See, Orbit One Commc'ns, Inc. v. Numerex Corp.* 271 F.R.D. 429, 438-439 (S.D.N.Y. 2010) ("When evidence is destroyed in bad faith, that fact alone is sufficient to support an inference that the missing evidence would have been favorable to the party seeking sanctions."). Aetna points to the Hoorizadeh invoice as evidence that IVS is and has been affirmatively misrepresenting the number of computers that were destroyed. Aetna also maintains there is no indication on those computers was saved to IVS's server, as that was not mentioned on the Hoorizadeh invoice. Aetna seeks an adverse inference that "copious amounts of material detrimental to IVS's case and/or supportive of Aetna's counterclaims were contained on those computers." (Aetna Motion, at 25.)

The destruction of IVS's computers is worrisome from an evidentiary standpoint. But Hoorizadeh did state in his declaration that the contents of the destroyed computers were loaded onto IVS's server. Again, the Arbitrator does not want to impose the harshest of sanctions on IVS at this stage. However, if a comprehensive search of IVS's iDrive does not turn up additional documents for production or the final report of the new forensic evaluation raises further concerns that cement any suspicions of wrongdoing, the Arbitrator may be inclined to

impose an adverse inference once the results of further forensic investigation discussed infra is known and the specific prejudice can be balanced

### 3. Communications Concerning IVS' Exclusion from Aetna's National Advantage Program

According to Aetna, IVS claims it did not learn of its 2010 exclusion from the Program until 2016. But Aetna points out that IVS's in-house counsel was seeking documentation on this topic as early as 2015 and argues this group of documents would have shown IVS was on notice of its exclusion long before 2016. Aetna asserts it is prejudiced, as it cannot use the documents to impeach IVS's position. Aetna seeks an adverse inference that "IVS was aware of Aetna's decision to exclude IVS from the NAP network well before June 2015." (Aetna Motion, at 26.)

IVS's explanation that its in-house counsel was referring to verbal requests for documentation in 2015 is reasonable and plausible. But more importantly, the prejudice to Aetna in not obtaining these documents, to the extent they exist, is minimal. It seems that Aetna already has evidence that IVS's in-house counsel sought information about IVS's exclusion from the Program back in 2015, a year before IVS claims it learned of its exclusion. Certainly, this evidence could be used for impeachment purposes. The Arbitrator does not believe the present records supports that an adverse inference with respect to these documents is warranted.

### C. Are Non-Terminating Sanctions Warranted?

In addition to terminating sanctions, Aetna also seeks an award of non-terminating sanctions for Aetna's costs incurred in investigating the issues addressed in (and preparing for) this Motion, and the appointment of a forensic neutral to oversee IVS's continued collection and production of relevant documents at IVS's expense. According to Aetna, IVS's actions constitute a "conscious or intentional failure to act" and a "wrongful intention to disobey discovery rules." *Sauer v. Superior Court*, 195 Cal. App. 3d 213, 227-228 (1987).

IVS claims to have gone above and beyond its Rule 17 requirements, substantively responding to Mr. Garrie's comprehensive requests for information about IVS's document production process and making its IT consultant Hoorizadeh available for an interview. But IVS fails to acknowledge that Mr. Garrie's investigation was only implemented as a direct result of IVS's failure to appropriately conduct its document production to industry standards and avoid delays in production. While the Arbitrator does not believe IVS's actions rise to the level of conduct required for the imposition of terminating sanctions at this point, IVS did fail to adequately and timely comply with its Rule 17 obligations. Clearly, the information sought by Aetna is relevant to the claims or defenses in this matter – the parties agreed on the relevant topics and agreed to produce related categories of documents based on agreed-upon search methodologies through the Rule 17 process. Just one week prior to the date of the hearing on this Motion, IVS produced over 3,000 documents that had only recently been OCR'd by its outside vendor. The questions raised by and delays associated with IVS's chaotic Rule 17 exchange were avoidable.

Accordingly, under JAMS Rule 29, the Arbitrator exercises her discretion and will award to Aetna the costs incurred in investigating IVS's production for purposes of its Motion. The Arbitrator will also order Mr. Garrie to be the neutral forensic evaluator going forward, to oversee and report on IVS's continued collection and production of documents. Mr. Garrie's further services will be at IVS's expense, subject to a potential reallocation at a later date as appropriate based on the findings. The Arbitrator notes IVS's counsel have represented that they have interviewed Mr. Garrie and agreed that he serve as a neutral in this role.

## III.    Ruling

Aetna's Motion for Sanctions is GRANTED as to its request for non-terminating sanctions and DENIED as to its request for terminating sanctions. The Arbitrator will reserve her decision on Aetna's requests for adverse inferences on the Sadow/Kim files and the destroyed computers, pending the conclusion of IVS's document collection and production and the Arbitrator's receipt of a final report from Mr. Garrie. Mr. Garrie will be appointed as the neutral forensic evaluator to oversee and evaluate IVS's continued collection and production of documents.

It is so Ordered.

Date: January 15, 2021

Hon. Gail Andler (Ret.)
Arbitrator